NATIVIDAD SANTIAGO, Plaintiff and Appellant, *v.* PHILIP EL-KOURY, Defendant and Appellee.

No. 7663.  Argued March 13, 1940.—Decided March 19, 1940.

E. H. F. Dottin for appellant. Joaquín Vendrell for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

This is an action in which damages are claimed for libel and slander. The question involved is simply one of the weight of the evidence. If the facts occurred as stated by the plaintiff, the complaint undoubtedly must prosper and the decision in *Casanova* v. *González Padín Co.,* 47 P.R.R 461, is applicable to this case. If, on the contrary, it was not error for the lower court to believe the version of the events given by the defendant, the above case is not applicable and the appeal shall be dismissed.

The judgment dismissing the complaint rests on an opinion in which the judge of the lower court sets up concisely but precisely the respective theories of the parties and the reasons for his resolving the conflict in the evidence in favor of the defendant. The opinion reads as follows:

"The sum of $3,000 is claimed as damages suffered by the plaintiff by reason of malicious slander on the part of the employees of the defendant who accused her of theft. It is alleged in the complaint that such accusation caused her a great nervous shock and an illness. The evidence was extremely short. The parties submitted the same without argument. After fully considering the same we may say that this is a typical case of conflicting evidence. The plaintiff and her witnesses, without discrepancy, set forth the facts relied upon for the action as follows: between 2 and 3 p. m., June 19, 1935, the plaintiff went into the establishment known as 'La Esperanza,' at 38 Salvador Brau street of this capital, belonging to the defendant. The establishment is a 5 & 10 cts. store. The plaintiff went into the shop to buy stockings. When close to the counter where such good are exhibited the plaintiff placed her bag on it. She examined the stockings but did not like them and took her bag in order to leave. Thereupon the saleswoman requested her to

deliver to her the bag because it belonged to somebody else who had left it there and that by doing so the plaintiff wanted to steal it. The latter protested. An employee higher up was called who asked he plaintiff to tell the contents of the bag. The latter enumerated the articles to be found therein, whereupon the employee, finding out that the plaintiff had spoken the truth, returned the bag to her. The incident was noticed by all the customers who were at the time in the shop. The accusation of theft made by the employee of the defendant was public and aloud. Such incident affected the nerves of the plaintiff so strongly that that same day she left for Naguabo and the next day her brother took her to Juncos. There she was examined by a physician and was kept by him in his clinic during nine days. She was suffering from such a nervous breakdown that she was constantly kept under close medical care. She still suffers from her nerves.

"The witnesses for the defendant give quite a different version. Here it is: The plaintiff came that day to the department of woman's apparel in defendant's store and there asked for stockings. In order to examine the same she placed her bag on the counter. Not liking the articles shown she made no purchases. She left the place but forgot her bag on the counter. The saleswoman took the bag and sent it to the office of the store. Shortly after the plaintiff returned in search of the missing object. The saleswoman then sent her to the man in charge of delivering objects found in the shop. After identification the bag was handed over to the plaintiff who left. Nothing more happened.

"If the first version is correct, then we must apply the doctrine laid down in *Casanova* v. *González Padín Co.,* 47 P.R.R. 461. However, after careful consideration and a reasonable and just analysis of the evidence as a whole and an examintion of the latter from every angle, taking into account the character of the witnesses, the credibility of their testimony and the nature of the action, our conclusion is that we should give credence to the evidence of the defendant. It matters not that his witnesses are his own employees He has no others. The credibility of their testimony, their manner of testifying, and the veracity of their statements, afford us greater certainty and full confidence in the analysis which we have made of the evidence as a whole. Things could not have happened as alleged by the plaintiff and her witnesses, because that is not the way they actually occur in life. It is inadmissible that the employees of the defendant could have behaved so thoughtlessly as charged by

the witnesses for the plaintiff. Experience, which is the great teacher in life, tells us that it is absurd to think that an employee should behave himself or herself so rudely and stupidly towards a customer and make imputations so out of place. The eye witnesses for the plaintiff, unlike those for the defendant, have not succeeded in bringing into our mind such conviction, such moral certainty and such peace of mind as is produced in the mind of the judge by the testimony of witnesses who speak the truth and nothing but the truth.

"The attorney for the plaintiff took the stand and explained to us his conduct.

"In conclusion, the facts in the instant case are not identical with those in the Casanova case, *supra.* They are different. The doctrine theerein laid down, therefore, is not applicable in the premises.

"We hold that the preponderance of the evidence favors the defendant. The charges against him are dismissed and the costs taxed against the plaintiff."

The attorney for the plaintiff, both in his brief and in his brilliant argument at the hearing, when urging that the trial judge committed manifest error in weighing the evidence, lays great stress on the following phrases from the written opinion:

"Things could not have happened as alleged by the plaintiff and her witnesses, because that is not the way they actually occur in life. It is inadmissible that the employees of the defendant could have behaved so thoughtlessly as charged by the witnesses for the plaintiff. Experience, which is the great teacher in life, tells us that it is absurd to think that an employee should behave himself or herself so rudely and stupidly towards a customer and to make imputations so out of place."

Indeed, in so expressing himself, the judge did not weigh his words. The theory of the plaintiff and her witnesses is not physically impossible and therefore it is not correct to say that the facts could not have happened as stated by them. The fact that men ordinarily behave in a certain way does not mean that at times they might not act differently. The idea that undoubtedly the judge had in mind at that moment was that the theory of the defendant was more probable than that of the plaintiff, as being more in harmony with the way

which ordinarily things happen, and as the evidence was conflicting, such circumstance, jointly with others which he says he had considered in his study and analysis of the evidence, decided him, after mentally weighing the evidence as a whole, to resolve the conflict in favor of the defendant.

It is unusual that a clerk, a young lady, should apply the word thief to the plaintiff, a lady who undoubtedly appears to be a respectable person, merely because she tried to take the bag which she alleged she had placed on the counter. Such disrespectful term might probably be applied by her to a person suspected in the establishment of habitually stealing, but not in the case of an unknown lady. It is still more improbable that the assistant to the owner of the establishment, whom we must suppose by reason of his position to be a person of culture and tact, should repeat gratuitously the same offensive word as applied to a lady.

The appellant alleges that in the *Casanova* case, *supra,* the defendants went still farther than the defendant did in the instant case. Such is the case, but the *Casanova* case was the first and up to the present the only one of that kind recorded on our reports. It originated, as the one before us, in an important establishment of this city, and terminated in a judgment against the defendant for the respectable amount of $5,000 which, far from stimulating the repetition of similar cases, has constituted a practical lesson as to the tact and circumspection that should be practiced in similar situations. Probably the defendant and his employees were acquainted with the *Casanova* case and its consequences, as the judgment rendered therein had been broadly published, and especially as it concerned the business community, and being acquainted with it, it is to be presumed that they would not commit the same blunder as that by the defendant therein. This circumstance the trial judge had probably also in mind in resolving the conflict in the present case.

From the foregoing, the appeal must be dismissed and the judgment appealed from affirmed.